UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LAWRENCE MARINO, an individual<br><br>Plaintiff,<br><br>vs.<br><br>AKAL SECURITY, INC., a New Mexico Corporation conducting business as a foreign corporation in California; JAMES MOSIER, an individual; LARRY HOMHENICK, an individual; DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. CV07 – 3931 VBF (CWx)<br><br>[Assigned to Honorable District Judge Valerie Baker Fairbank [Courtroom – 9]<br><br>**DEFENDANT'S FINDINGS OF FACTS AND CONCLUSIONS OF LAW** |

TO THE HONORABLE COURT, TO PLAINTIFF, AND HIS COUNSEL OF RECORD:

Defendant Akal Security, Inc. (hereinafter referred to as "AKAL"), hereby submits the following Findings of Facts and Conclusions of Law.

/ / /

/ / /

/ / /

# I.

## FINDINGS OF FACTS

1. AKAL is a contractor of the United States Marshals Service ("USMS").

2. AKAL and the United States Marshals Service ("USMS") entered into a contract whereby AKAL provides security services within the Ninth Circuit ("Ninth Judicial Circuit contract").

3. Plaintiff Lawrence Marino (hereinafter "Mr. Marino") was hired by AKAL in about 2000, as a Court Security Officer ("CSO") for the United States District Court, Central District of California.

4. Mr. Marino was assigned to work at the federal courthouse located at 312 Spring Street, in downtown Los Angeles.

5. AKAL required Marino to meet certain CSO Performance Standards as outlined in the current contract between the USMS and AKAL.

6. Marino was employed pursuant to the Collective Bargaining Agreement ("CBA") between AKAL and the Court Security Officers Union – Central District of California ("CSOU-CDC") (hereinafter the "Union").

7. Between about June 2002 through 2005, Mr. Marino allegedly wrote letters to various members of Congress and government entities, including the FBI, in which he accused AKAL and its owners of criminal activity and misconduct.

8. During Marino's employment with AKAL, the United States Department of the Army ("the Army"), ordered Marino to report to active duty in May 2005.

9. At the time he was ordered to report to active duty in 2005, Marino's work shift was Tuesday through Saturday, commencing at 5:30 a.m., with days off on Sundays and Mondays.

10. In about May 2005, AKAL placed Marino on a military leave of absence.

11. On or about October 2, 2005, Marino notified James Mosier, AKAL's

Site Supervisor, of his intent to return to work on November 7, 2005.

12. On or about October 12, 2005, AKAL notified Marino that he would be permitted to resume to work under the same work schedule that he had prior to his military leave of absence.

13. In November 2005, Marino returned to work after his six-month military leave of absence: Marino retained his seniority and resumed his duties under the position he held prior to his military leave of absence.

14. On or about November 15, 2005, CSO Dennis Noble and CSO James Timms observed Marino in the down room of the Spring Street federal courthouse drinking a beverage from what appeared to be a beer bottle labeled *Coors*.

15. On November 16, 2005, Lead CSO Mark Del Mar wrote a memo to Site Supervisor Jim Mosier informing him of the CSOs' observations.

16. The USMS instructed AKAL to investigate the allegations against Marino and AKAL immediately launched an investigation.

17. On November 18, 2005, Mr. Mosier met with Marino to interview him about the incident. Initially, Marino refused to cooperate with the investigation and at one point Marino stood up from a chair, walked to Mosier's desk, slammed both fists down on the desk, put his face within a few inches of Mosier's face and shouted "I am not going to say a thing to you without my attorney present, now you do what you have to do."

18. AKAL learned through its investigation that the Coors beverage consumed by Mr. Marino on November 15, 2005 contained a small amount of alcohol and is only sold to persons over the age of 21 due to its alcohol content.

19. AKAL's investigation disclosed that Retired Chief Deputy Robert Masaitis and Mr. Mosier had previously counseled Mr. Marino about drinking such non-alcoholic beverages because they contain alcohol, smell like beer and may e prohibited in the federal courthouse.

20. Based on the results of AKAL's investigation, AKAL recommended to the USMS that Marino be suspended for 30-days and given a final written

warning.

21. The USMS did not agree with AKAL's recommended course of action because Marino had been counseled for the same offense on a previous occasion and had violated multiple rules and regulations.

22. On or about December 20, 2005, the USMS ordered AKAL to "permanent[ly] remove" Marino from the contract because of Marino's "lack of professional conduct" and multiple violations of CSO Standards of Conduct.

23. As a USMS contractor, AKAL was legally required to comply with the USMS's mandate.

24. The CBA, applicable to Marino's employment, required that AKAL terminate any CSO who was removed from the contract by the government or whose credentials were revoked by the USMS. Specifically, section 6.1(A) of the CBA reads: "[a]fter completion of the probationary period, as specified in section 2.5, no Employee shall be dismissed or suspended without just cause. Just cause shall include any action or order of removal of an employee from working under the contract by the U.S. Government, or revocation of required CSO credentials by the USMS under the removal of Contractor employee provision in Section H-3 of Contract DJMS-05-D-002, or its successor, between the US Marshals Service, US Attorney's Office, members of the Judiciary and other and Akal Security, Inc**.**

25. On or about December 21, 2005, in accordance with the dictates of the CBA, AKAL terminated Marino's employment with AKAL.

**II.**

**CONCLUSIONS OF LAW**

1. Defendant is entitled to judgment as a matter of law to Plaintiff's first claim for retaliation and wrongful termination for whistle-blowing in violation of Cal. Lab. §1102.5 as Plaintiff has been unable to establish a *prima facie* case of retaliation, i.e., that Plaintiff (1) engaged in a protected activity, (2) was thereafter subjected to an adverse employment action by AKAL, and (3) there was a causal link between the protected activity and the adverse employment action. *Patten v.*

*Grant Joint Union High School Dist.*, 134 Cal.App.4th 1378, 1384 (2005). *Patten, supra*, 134 Cal.App.4th at 1387; *citing Yanowitz v. L'oreal USA, Inc.*, 36 Cal.4th 1028, 1036 (2005). Also, Plaintiff cannot establish the required causal connection between any of his alleged protected activities and his purported adverse employment actions. *Morgan v. Regents of the Univ. of Calif.*, 88 Cal.4th 52, 69-70 (2000). Even if Plaintiff could establish a *prima facie* case of retaliation, the findings of facts establish that AKAL terminated Plaintiff's employment for a legitimate, non-retaliatory reason.

6. Defendant is entitled to judgment as a matter of law to Plaintiff's second claim for retaliation and wrongful termination in violation of public policy because it is entirely premised on Plaintiff's flawed statutory claim under Cal. Lab. §1102.5. *See e.g. Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 229 . (1999); *DeHorney v. Bank of America National Trust & Savings Ass'n*, 879 F. 2d 459, 465 (9th Cir. 1989); *Jenkins v. MCI Telecommunications Corp.*, 973 F. Supp. 1133, 1137 (C.D. Cal. 1997).

7. Defendant is entitled to judgment as a matter of law to Plaintiff's third claim for wrongful termination in violation of public policy because it is entirely premised on Plaintiff's flawed fourth claim alleging a violation of USERRA. *See DeHorney v. Bank of America National Trust & Savings Ass'n*, 879 F. 2d 459, 465 (9th Cir. 1989); *Jenkins v. MCI Telecommunications Corp.*, 973 F. Supp. 1133, 1137 (C.D. Cal. 1997).

8. Defendant is entitled to judgment as a matter of law to Plaintiff's fourth claim for wrongful termination in violation of USERRA because the findings of facts establish that Plaintiff's termination was not motivated by Plaintiff's military service. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2001).

9. Defendant is entitled to judgment as a matter of law to Plaintiff's fifth claim for breach of contract as Plaintiff abandoned that claim prior to trial (see Plaintiff's Pretrial Conference Order, filed January 16, 2009, document 93), and

Plaintiff presented no argument or evidence to support that claim at trial.

10. Defendant is entitled to judgment as a matter of law to Plaintiff's sixth claim for breach of the Collective Bargaining Agreement because the findings of fact establish no breach of the Collective Bargaining Agreement by Defendant Akal.

11. Defendant is entitled to judgment as a matter of law to Plaintiff's seventh claim for relief for breach of the implied covenant of good faith and fair dealing because there the findings of fact establish no evidence in support of the elements of this claim. See CACI 2423.

DATED: February 4, 2009

GORDON & REES LLP

By: ______________________
JOSHUA B. WAGNER
Attorney for Defendant
AKAL SECURITY, INC.

IT IS SO ORDERED BY THE COURT.

DATED: February 10, 2009

Valerie Baker Fairbank
Honorable Valerie Baker Fairbank